**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

**THE B & F SYSTEM, INC.**,

    Plaintiff,

v.

**LLOYD J. LEBLANC JR., et al.**,

    Defendants.

Civil Action No. 7:07-CV-192 (HL)

**ORDER**

A pretrial conference was held in this case on December 21, 2011. A number of issues were raised which require a ruling from the Court prior to trial, which will begin on January 17, 2012. After review, the Court rules as follows.

1. The jury will be qualified as to officers, employees, and stockholders of State Farm Fire and Casualty Company. The jury will also be qualified as to relatives of stockholders of State Farm Fire and Casualty Company. *See* Dalton v. Vo, 230 Ga. App. 413, 497 S.E.2d 245 (1998) ("[C]ontrolling case law does not limit this right to inquire to policyholders of mutual companies but extends it to officers, employees, stockholders or anyone related to stockholders of the insurance company.")

2. All discovery should now be concluded, including the depositions of Mr. Elmore and Ms. Bour. If this is not the case, the parties are ordered to contact the Court immediately.

3. Defendants' oral motion for reconsideration on the partnership issue is denied. The jury will determine whether there was a partnership between Lloyd, Jody, and Jeff LeBlanc.

4. The jury will not consider either a joint enterprise or unlawful common enterprise theory of liability. *See* Pretrial Order ¶¶ 10(o)-(p). In its summary judgment order, the Court found, among other things, that Plaintiff had abandoned its common enterprise claim as to the individual defendants. The Court will not revisit that finding. As for the joint enterprise, the Court agrees with Defendants that this is a new claim which should not be introduced into the case at this time.

5. Plaintiff has withdrawn its separate claim for inducing breach of the MIDA. *See* Pretrial Order ¶ 10(g).

6. The Court has allowed Plaintiff's § 43(a)(1)(A) Lanham Act confusion claim to go to the jury. To establish a confusion claim, Plaintiff must point to a part of Defendants' commercial assertions that is a "false designation of origin, false or misleading description of fact, or false or misleading representation of fact." 15 U.S.C. § 1125(a). The confusion claim is separate from the false advertising claim under § 43(a)(1)(B). The Court finds no merit in Defendants' argument that Plaintiff cannot use a false or misleading description or representation of fact to establish its confusion claim. *See* Pretrial Order ¶ 10(k).

7.      With regard to the cybersquatting claim, *see* Pretrial Order ¶ 10(l), the only Defendant who could be held personally liable for violating the ACPA is Jeff. The jury will have to determine whether Jeff violated the ACPA. Depending on the jury's decision on that issue, the partnership issue, and the conspiracy claim, Jeff's liability, if any, may be imputed to other Defendants. The Court reminds the parties that there is no trafficking claim in the case, and also that any liability on Jeff's part will be limited to use of maxamwholesale.com and maxamwholesale.net after the termination of the MIDA and SMLA in light of the safe harbor ruling.

8.      In Paragraph 10(r) of the Pretrial Order, Plaintiff states that the jury is to determine the amount of monetary relief to which Plaintiff is entitled, including but not limited to, damages, profits, and punitive damages. Based on the Court's review of the case, it appears that there is one remaining claim where punitive damages are available - the tortious interference with contractual relations claim. While Plaintiff did not specifically request punitive damages on this claim in either its complaint or amended complaint, the Eleventh Circuit has held that under Federal Rule of Civil Procedure 54(c), which governs this federal case, "a special prayer for punitive damages [i]s unnecessary . . . [i]f the complaint alleges conduct that would support a claim for punitive damages, and if evidence is presented creating a jury question on such relief." Scutieri v. Page, 808 F.2d 785, 792 (11th Cir. 1987). The Court finds that a punitive damage charge is appropriate and Plaintiff can seek punitive damages on the tortious interference claim.

In light of the punitive damages claim, the case will now be trifurcated. As relates to the tortious interference claim, subject to the outcome of the first phase of the trial, the jury will determine in the second phase whether PMDJ, DSI, Jeff, Jody, or Edna tortiously interfered with the MIDA or SMLA. If the jury decides there was tortious interference, in the third phase the jury would decide whether Plaintiff proved by clear and convincing evidence that it is entitled to punitive damages, whether the Defendants acted with the specific intent to harm Plaintiff, and would award punitive damages as appropriate.

9. Defendants contend that the second sentence of Paragraph E of the MIDA is a void non-disclosure covenant and cannot be the basis of a breach of contract claim. Defendants argue that because there is no time limitation on this provision, it is void as a matter of law.

Paragraph E reads: "The Company will supply printouts of master customer list for area, inventory status reports, and other such reports as available at no charge. The master customer list remains the property of The B & F System, Inc., and may not be sold, leased or given to any person or company for any purpose whatsoever."

Looking at the provision in its entirety, the Court finds it to be valid. The plain reading is that Plaintiff will supply printouts of the customer list and those printouts cannot be sold, leased, or given to anyone else. This provision merely establishes that the physical lists are Plaintiff's property. Plaintiff contends that Defendants gave

4

the master list away in violation of Paragraph E. It may be entitled to recover for a breach of that paragraph if it can show that a tangible copy of the list was sold, leased, or given away. The Court notes, however, that there is nothing in the paragraph prohibiting the disclosure of information contained in the list. All that is prohibited is selling, leasing, or giving away a tangible copy of the list, and Plaintiff's claim at trial will be limited accordingly.

10. The Court held in its summary judgment order that there was a jury issue as to whether there was a civil conspiracy between Lloyd, Edna, Jeff, and Jody. Defendants now contend that the conspiracy claim should be stricken from the case. For whatever reason Defendants did not move for summary judgment on the civil conspiracy claim. Plaintiff did so move, but the Court found that it had not established the claim as a matter of law. The Court will not now go back and revisit the issue. If Plaintiff fails to present evidence to establish a conspiracy, Defendants can make an appropriate motion during trial.

11. In subpart 16 of Paragraph 10 of the Pretrial Order, Defendants state that the jury is to determine Lloyd's breach of contract claim as to the MIDA, as modified or amended, or otherwise supplemented, concerning Plaintiff's failure to pay commissions, direct sales to customers in Lloyd's assigned territories, and failure to provide customer lists. Plaintiff objects to this issue, claiming that Defendants are attempting to inject new matters into the litigation. The Court disagrees with Plaintiff. In his Fourth Counterclaim, Lloyd alleged that Plaintiff failed to pay commissions,

attempted to make direct sales to customers in Lloyd's assigned territories, and failed to provide customer lists. These claims have been in the case since the filing of Lloyd's amended answer and counterclaims. Neither party moved for summary judgment, and the Court will not revisit the issue now.

12. For Plaintiff's cyberpiracy claim, it may elect to receive either statutory damages or actual damages and profits. The election may be made at any time before final judgment is rendered by the Court. *See* 15 U.S.C. § 1117(d).

13. In an effort to make the multitude of issues in this case understandable to the jury, the Court has decided to organize the trial as follows. In the first phase, the jury will determine the partnership issue, the termination dates for the MIDA and SMLA, and Edna's knowledge of the SMLA. Counsel will be required to make a short opening statement which shall explain the contentions of the parties relating to these topics and the evidence which each party believes that it will produce in support of its position. Each attorney will explain briefly what witnesses he will call and what points he expects each witness to make. At the close of the evidence in the first phase, each attorney will make a brief closing argument. After the jury returns the verdict from the first phase, the second phase will commence.

In the second phase, the remaining merits claims will not be heard all at one time, but instead will be segmented by area of law. Counsel will be allowed a ten-minute opening statement at the beginning of each segment in which he shall briefly explain the contentions of the parties relating to the specific segment claims and the

evidence which each party believes that it will produce in support of its position. Each attorney will explain briefly what witnesses he will call and what points he expects each witness to make. All evidence as to the particular claims contained in the segment will be heard during the segment. It may be that witnesses will be required to testify during more than one segment, and counsel will be allowed to call witnesses as many times as needed. Once the evidence is closed, counsel will then make a full closing statement regarding the issues addressed in the second phase. The segments, and the claims contained therein, are as follows:

**(1) Breach of Contract**

(a) Plaintiff's breach of contract claim as to Paragraphs 3, 4, and E of the MIDA (Count V);

(b) Plaintiff's breach of the SMLA claim (Count XIV);

(c) Lloyd's wrongful termination of contract claim (Counterclaim I);

(d) Lloyd's breach of the covenant of good faith and fair dealing claim (Counterclaim III); and

(e) Lloyd's breach of contract claim as to the MIDA and Plaintiff's failure to pay commissions, attempts to make direct sales to customers in Lloyd's assigned territories, and failure to provide customer lists (Counterclaim IV)

**(2) Tortious Interference**

(a) Plaintiff's tortious interference with contractual relations claim against PMDJ and DSI as to the MIDA (Count VIII); and

(b) Plaintiff's tortious interference with contractual relations claim against Jeff, Jody, Edna, DSI, and PMDJ as to the SMLA (Count VIII)

7

**(3) Lanham Act and related state law claims**

(a) Plaintiff's claim for infringement of federally registered marks under 15 U.S.C. § 1114 (Count I);

(b) Plaintiff's false designation of origin claim under 15 U.S.C. § 1125(a) (Count II);

(c) Plaintiff's claim under the Georgia Uniform Deceptive Trade Practices Act (Count IV); and

(d) Plaintiff's cyberpiracy claim (Count III)

**(4) Vicarious Liability**

(a) Plaintiff's claim that Lloyd, Jeff, and Jody should be held personally liable for torts or trademark infringement committed by MWA, DSI, and PMDJ (Count XV);

(b) Plaintiff's claim that Lloyd, Edna, Jeff, and Jody should be held jointly and severally liable under a civil conspiracy theory (Count XV); and

(c) Plaintiff's claim that MWA, DSI, and PMDJ acted as a common business enterprise (Count XV).

14. A copy of the Special Interrogatories to the jury for the first phase of the trial is attached to this Order.

15. After the first phase of the trial is completed, the parties are ordered to submit to the Court a proposed verdict form for the second phase of the trial.

**SO ORDERED**, this the 9th day of January, 2012.

>  *s/Hugh Lawson*
>  **HUGH LAWSON, SENIOR JUDGE**

mbh