**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | |
|---|---|
| **THE B & F SYSTEM, INC.**, | |
| Plaintiff, | |
| v. | Civil Action No. 7:07-CV-192 (HL) |
| **LLOYD J. LEBLANC JR., MAXAM WHOLESALE OF ATLANTA, INC., DIRECT SOURCE IMPORTS, INC., ARTHUR JEFFREY LEBLANC, LLOYD LEBLANC III, PRODUCTOS MEXICANOS DON JOSE, INC., LEBLANC'S LLC, and EDNA G. LEBLANC,** | |
| Defendants. | |

**ORDER**

This case is before the Court on the following motions: (1) Defendants' Motion for Judgment as a Matter of Law, for Equitable Revision Pursuant to 15 U.S.C. § 1117(a), and/or in the alternative, for New Trial, or Partial New Trial, or Remittitur (Doc. 296); (2) Plaintiff's Motion for Statutory Damages (Doc. 299); (3) Plaintiff's Motion for Permanent Injunctive Relief (Doc. 300); and (4) Plaintiff's Motion for Attorney's Fees (Doc. 303).

Upon consideration, the Court rules as follows:

(1)     Defendants' Motion for Judgment as a Matter of Law, for Equitable Revision Pursuant to 15 U.S.C. § 1117(a), and/or in the alternative, for New Trial, or Partial New Trial, or Remittitur (Doc. 296) is denied.

(2)     Plaintiff's Motion for Statutory Damages (Doc. 299) is granted, in part, and denied, in part.

(3)     Plaintiff's Motion for Permanent Injunctive Relief (Doc. 300) is granted, in part, and denied, in part.

(4)     Plaintiff's Motion for Attorney's Fees (Doc. 303) is granted, in part, and denied, in part.

## I.     BACKGROUND

This case was tried in three phases to a jury beginning on January 17, 2012. On January 23, 2012, the jury returned its Phase I verdict. On February 3, 2012, the jury returned its Phase II verdict and Phase III verdict. In Phase II, the jury found that: (1) Lloyd LeBlanc was liable for breach of the Maxam Independent Distributor Agreement ("MIDA"); (2) Lloyd LeBlanc was liable for breach of the Service Mark License Agreement ("SMLA"); (3) Productos Mexicanos Don Jose, Inc. ("PMDJ") and Direct Source Imports, Inc. ("DSI") tortiously interfered with the contractual relationship between Lloyd LeBlanc and Plaintiff established by the MIDA; (4) Edna LeBlanc, Jeff LeBlanc, Jody LeBLanc, PMDJ, and DSI tortiously interfered with the contractual relationship between Lloyd LeBlanc and Plaintiff established by the SMLA; (5) Lloyd LeBlanc, Jeff LeBlanc, Jody LeBlanc, Edna LeBlanc, Maxam Wholesale of Atlanta, Inc. ("MWA"), DSI, and PMDJ infringed on Plaintiff's "MAXAM" registered trademark; (6) Lloyd LeBlanc, Jeff LeBlanc, Jody LeBlanc, Edna LeBlanc, MWA, DSI, and PMDJ infringed on Plaintiff's lid knob trademark; (7) Lloyd LeBlanc, Jeff LeBlanc, Jody LeBlanc, Edna LeBlanc, MWA, DSI, and PMDJ infringed on Plaintiff's "MAXAM WHOLESALE" trademark; (8) Jeff LeBlanc, Jody LeBlanc, DSI,

2

and PMDJ were liable for false designation of origin/unfair competition; (9) Jeff LeBlanc, Jody LeBlanc, DSI, and PMDJ violated the Georgia Uniform Deceptive Trade Practices Act; (10) Jeff LeBlanc violated the Anticybersquatting Consumer Protection Act ("ACPA"); (11) Lloyd LeBlanc, Edna LeBlanc, Jeff LeBlanc, and Jody LeBlanc engaged in a civil conspiracy; (12) DSI and PMDJ engaged in a common business enterprise; and (13) Jody LeBlanc and Jeff LeBlanc are personally liable for any trademark infringement, false designation of origin/unfair competition, and torts committed by PMDJ and DSI.

The jury found that the Lanham Act violations were malicious, fraudulent, deliberate, or willful. The jury also found that with regard to the Georgia Uniform Deceptive Trade Practices Act claim, the liable Defendants willfully engaged in the trade practice knowing it to be deceptive. The jury also determined that Jeff LeBlanc's ACPA violations were malicious, fraudulent, deliberate, or willful.

The jury returned verdicts for Plaintiff on each of Lloyd LeBlanc's counterclaims. The jury also returned defense verdicts in favor of LeBlanc's, LLC on all claims brought against it by Plaintiff.

As for damages, the jury awarded $72,114 on the breach of the MIDA claim, $35,665 on the breach of the SMLA claim, $7,500 on the MIDA tortious interference claim against DSI, $35,665 on the SMLA tortious interference claim against Jeff LeBlanc, $35,665 on the SMLA tortious interference claim against Jody LeBlanc, $35,665 on the SMLA tortious interference claim against PMDJ, $57,066 on the

SMLA tortious interference claim against DSI, $600,000 in actual damages on the Lanham Act claims, $357,040 in profits on the Lanham Act claims, $96,000 in actual damages on the ACPA claim, and $96,000 in profits on the ACPA claim.

In their Phase III verdict, the jury declined to award any punitive damages to Plaintiff.

Defendants have now renewed their prior motions for judgment as a matter of law under Federal Rule of Civil Procedure 50. Defendants have also moved for equitable revisions of the jury's Lanham Act verdicts pursuant to 15 U.S.C. § 1117(a). In the alternative, Defendants request a new trial under Federal Rule of Civil Procedure 59, or a remittitur.[1]

## II. DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW, FOR EQUITABLE REVISION PURSUANT TO 15 U.S.C. § 1117(a), AND/OR IN THE ALTERNATIVE, FOR NEW TRIAL, OR PARTIAL NEW TRIAL, OR REMITTITUR[2]

### A.    Renewed Motion for Judgment as a Matter of Law

Federal Rule of Civil Procedure 50 provides that "[a] party's motion for judgment as a matter of law can be granted at the close of evidence or, if timely

_____

[1] Looking at Defendants' motion, it appears the Court did not get anything right during the entire three week trial. The Court has endeavored to address every error raised by Defendants.

[2] On May 8, 2012, the Court entered a text order denying Defendants' motion for leave to file excessive pages for its reply brief. In an obvious effort to flout the Court's ruling, Defendants filed a reply brief written in 10-point font without a proper full case caption. These efforts did not go unnoticed by the Court.

renewed, after the jury has returned its verdict, as long as 'there is no legally sufficient evidentiary basis for a reasonable jury to find'" for the non-moving party. Chaney v. City of Orlando, Fla., 483 F.3d 1221, 1227 (11th Cir. 2007) (quoting Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001) (citing Fed.R.Civ.P. 50)). A jury verdict "must be left intact if there is evidence from which the decision maker . . . reasonably could have resolved the matter the way it did." Rodriguez v. Farm Stores Grocery, Inc., 518 F.3d 1259, 1264 (11th Cir. 2008). Even if the evidence would have supported a verdict for the losing party, "[t]he issue is not whether the evidence was sufficient for [the losing party] to have won, but whether the evidence was sufficient for it to have lost." Id. at 1264-65. A "court must evaluate all the evidence, together with any logical inferences, in the light most favorable to the non-moving party." Beckwith v. City of Dayton Beach Shores, Fla., 58 F.3d 1554, 1560 (11th Cir. 1995).

Defendants argue that they are entitled to judgment as a matter of law on the following: (1) the breach of the MIDA claim against Lloyd LeBlanc; (2) the tortious interference claim against Edna LeBlanc, Jody LeBlanc, Jeff LeBlanc, PMDJ, and DSI as to the SMLA; (3) the tortious interference claim against PMDJ and DSI as to the MIDA; (4) the jury's finding that the lid knob trademark is a valid trademark; (5) the jury's finding that Defendants infringed on the lid knob trademark; (6) the jury's finding that "MAXAM WHOLESALE" was a valid trademark; (7) the jury's finding that Plaintiff owned the common law trademark "MAXAM WHOLESALE"; (8) the jury's

finding that Defendants infringed on the "MAXAM WHOLESALE" common law trademark; (9) the false designation of origin/unfair competition claim against Jeff LeBlanc, Jody LeBlanc, DSI, and PMDJ; (10) the jury's actual damages award on the Lanham Act claims; (11) the jury's finding that the Defendants' actions in connection with the Lanham Act claims were malicious, fraudulent, deliberate, or willful; (12) the jury's profit award on the Lanham Act claims; (13) the jury's actual damages award on the ACPA claim; and (14) the jury's profits award on the ACPA claim.[3]

Applying the standards set forth for a Rule 50 motion, the Court finds that the evidence was sufficient to support the jury's determinations. Defendants are not entitled to judgment as a matter of law under Rule 50(b).

### B.    Motion for New Trial

Federal Rule of Civil Procedure 59(a) governs motions for new trial. Pursuant to Rule 59, a court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed.R.Civ.P. 59(a)(1)(A). A party may seek new trial on the grounds "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out

---

[3] Defendants specifically mention Rule 50 and a request for judgment as a matter of law in connection with these issues.

of alleged substantial errors in admission or rejection of evidence or instructions to the jury." <u>Montgomery Ward & Co. v. Duncan</u>, 311 U.S. 243, 251, 61 S.Ct. 189 (1940). Resolution of a motion for new trial is committed to the discretion of the trial court. <u>Montgomery v. Noga</u>, 168 F.3d 1282, 1295 (11th Cir. 1999).

Defendants seek a new trial based on weight of the evidence, alleged errors in the jury instructions and verdict form, and alleged errors in evidentiary decisions.

### 1.    Weight of the evidence

"A judge should grant a motion for new trial when 'the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'" <u>Lipphardt</u>, 267 F.3d at 1186 (quoting <u>Hewitt v. B.F. Goodrich Co.</u>, 732 F.2d 1554, 1556 (11th Cir. 1984)). "Because it is critical that a judge does not merely substitute his judgment for that of the jury, 'new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great - not merely the greater - weight of the evidence.'" <u>Lipphardt</u>, 267 F.3d at 1186.

Defendants contend that the following portions of the jury's verdict were against the great weight of the evidence: (1) that Lloyd LeBlanc breached the MIDA resulting in damages to Plaintiff; (2) that Lloyd LeBlanc breached the SMLA resulting in damage to Plaintiff; (3) that Plaintiff did not breach the MIDA; (4) that Plaintiff did not breach the covenant of good faith and fair dealing; (5) that any Defendant tortiously interfered with any contractual relationship between Lloyd LeBlanc and

Plaintiff resulting in damage to Plaintiff; (6) that the lid knob trademark is a valid trademark; (7) that Defendants infringed on the lid knob trademark; (8) that Defendants infringed on the "MAXAM WHOLESALE" common law trademark; (9) that Jeff LeBlanc, Jody LeBlanc, DSI, and PMDJ committed false designation of origin/unfair competition; (10) that Defendants' actions in connection with the Lanham Act claims were malicious, fraudulent, deliberate, or willful; (11) the actual damages verdict on the Lanham Act claims; (12) that Plaintiff was entitled to profits on the Lanham Act claims; and (13) that Defendants violated the Georgia Uniform Deceptive Trade Practices Act.[4]

Upon review, the Court finds that the evidence was sufficient to support the verdict. The verdict was not against the clear weight of the evidence, and it will not result in a miscarriage of justice.

## 2.    Jury instructions and verdict form

A motion for new trial based on erroneous jury instructions is properly granted only where there is "substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." Johnson v. Barnes & Noble Booksellers, Inc., 437 F.3d 1112, 1115 (11th Cir. 2006) (citation omitted). The question is "whether the jury charges, considered as a whole, sufficiently instructed the jury so that the jurors

---

[4] Defendants specifically mention the "weight of evidence" in connection with these jury findings. Many are repetitive of those addressed as part of the Rule 50 motion.

understood the issues and were not misled." Johnston v. Companion Prop. & Cas. Ins. Co., 318 F. App'x 861, 864 (11th Cir. 2009). "If the jury instructions accurately reflect the law, the trial judge is given wide discretion as to the style and wording employed in the instructions." Johnson, 437 F.3d at 1115.

The failure to give a requested jury instruction is error "only if the instruction is correct, is not adequately covered by the charges given, and deals with a point so important that failure to give the instruction seriously impaired the defendant's ability to present an effective defense." Adams v. Sewell, 946 F.2d 757, 767 (11th Cir. 1991) (quoting United States v. Hill, 935 F.2d 196, 200 (11th Cir. 1991)).

The Court also has wide discretion in framing the wording and styling of the verdict form. See Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1330 (11th Cir. 1999). Jury instructions and verdict forms are considered together rather than separately in assessing a motion for a new trial. Id. at 1329.

Defendants argue that the Court erred by not giving all or portions of its requests to charge 12, 13, 14B, 26, 36, 36A, 37, 41, 42, 42A, 42B, 45, 51, 53, supplemental charges 1 and 2, and a stipulation regarding paragraphs 2 and 15 of the MIDA. Defendants also contend the Court gave numerous incorrect charges, including the tortious interference with contractual relations charges and certain Lanham Act charges.

The Court first notes that requests to charge 36A, 42A, and 42B were not given because they were not timely submitted. As for the other arguments relating to

the requests to charge, upon review of the record, the Court finds no meritorious basis for it to grant a new trial based on the jury instructions.

The Court similarly finds no basis for a new trial in Defendants' argument regarding the verdict form. Defendants make a conclusory argument that failure to use their proposed special interrogatories materially affected their substantial rights to a fair trial. Such a conclusory argument does not establish grounds for a new trial.

### 3. Evidentiary rulings

An evidentiary ruling warrants a new trial only if the complaining party's substantial rights were affected. Peat, Inc. v. Vanguard Research, Inc., 378 F.3d 1154, 1162 (11th Cir. 2004). Defendants have the burden of proving that an error "probably had a substantial influence on the jury's verdict." United States v. Stephens, 365 F.3d 967, 977 (11th Cir. 2004) (quotation marks and citation omitted).

Defendants argue that the Court erred by admitting Plaintiff's Exhibits 45, 52, 55-58, 60, 82, 200, 218-221, 271, 291-292, 323, and 339 during Phase I of the trial. These exhibits are purchasing documents.

Defendants argue that the Court erred by admitting Plaintiff's Exhibits 61, 63-69, 83, 85-86, 90-94, 184-185, 187-189, 209, 213-214, 217, 233, 277, 287, 290, 301, 317-319, 321, 342-343, and 456 during Phase II of the trial. These exhibits are also purchasing documents. Defendants further contend the Court should not have allowed testimony from Plaintiff about these documents.

Defendants contend that the Court erred in allowing testimony from Plaintiff regarding Paragraph 4 of the MIDA.

Defendants also contend the Court erred in admitting Plaintiff's Exhibits 17, 19, 97-98, 101, 105, 108-109, 110-113, 117, and 204 during Phase II of the trial. These are physical exhibits including baseball caps, cutlery sets, cookware, leather vests, and leather purses. These exhibits were presented to the jury so they could compare the products sold by Plaintiff and Defendants.

Defendants contend the Court erred by allowing testimony from Plaintiff regarding the MIDA.

Defendants contend the Court erred by allowing testimony from Plaintiff concerning alleged compromise settlements of other infringement claims against Lake Industries and Jillian Distributors.

Defendants finally argue the Court erred by allowing testimony from John Meyer about alleged customer confusion and the opinions of customers regarding the distinctiveness of the lid knob.

As noted above, to be entitled to a new trial on the basis of the admission or exclusion of evidence, the moving party must show that the alleged error affected its substantial rights. To the extent there was any error, Defendants have not shown that the error resulted in substantial prejudice or substantial injustice. The Court declines to award a new trial on this ground.

### 4.    Other issues

Defendants argue that the Court erred by allowing the jury to consider Paragraph E of the MIDA. Defendants assert that Paragraph E is void. The Court ruled on that issue prior to trial, finding that the jury could consider Paragraph E. The Court disagrees with Defendants that judgment as a matter of law on that issue is required.

Defendants also argue that the Court erred in changing its pretrial ruling to extend Paragraph E to electronic customer lists. However, the Court is not prohibited from revoking or changing pretrial rulings based on the evidence and argument presented at trial. The Court outlined the reasons it believed it appropriate to change this particular ruling and finds no reason to grant a new trial on that basis.

## C.    Equitable Revision/Remittitur

Defendants contend that all of the damages awarded by the jury are excessive. They have requested that the Court exercise its equitable powers under 15 U.S.C. § 1117(a) and reduce the jury's verdicts on the Lanham Act claims. They alternatively request a remittitur of all of the jury's monetary awards.

The standard for reviewing jury awards is whether the award "shocks the conscience of the court." *See* Simon v. Shearson Lehman Bros., Inc., 895 F.2d 1304, 1310 (11th Cir. 1990); Sykes v. McDowell, 786 F.2d 1098, 1105 (11th Cir. 1986). A court which believes the jury's verdict is excessive may order a new trial unless the plaintiff agrees to remit a portion of the jury's award. Johansen v. Combustion Eng'g, Inc., 170 F.3d 1320, 1328 (11th Cir. 1999). However, "[t]he district judge should not

substitute his own credibility choices and inferences for the reasonable credibility choices and inferences made by the jury." Redd v. City of Phenix City, Ala., 934 F.2d 1211, 1215 (11th Cir. 1991) (citing Rosenfield v. Wellington Leisure Prods., Inc., 827 F.2d 1493, 1498 (11th Cir. 1987)). "When there is some support for a jury's verdict, it is irrelevant what we or the district judge would have concluded." Id.

Having heard the evidence at trial, and taking into consideration the deference due the jury's determination, the Court finds that the jury's award is not beyond the realm of reasonableness. The Court declines to reduce or remit the jury's damage award.

## III.    PLAINTIFF'S MOTION FOR STATUTORY DAMAGES

As noted above, the jury found that Jeff LeBlanc violated the ACPA through his use of the domain names maxamwholesale.com and/or maxamwholesale.net during the time period of May 31, 2007 to June 4, 2011. The jury awarded Plaintiff $96,000 in actual damages and $96,000 in profits. The jury also found that Jeff LeBlanc's actions were malicious, fraudulent, deliberate, or willful.

Under the ACPA, "the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." 15 U.S.C. § 1117(d). Plaintiff now requests that the Court award statutory damages in the amount of

$100,000 for maxamwholesale.com and $100,000 for maxamwholesale.net against Lloyd LeBlanc, Edna LeBlanc, Jeff LeBlanc, and Jody LeBlanc each individually.

The Court will first address Plaintiff's request that the statutory damages be awarded against Lloyd LeBlanc, Edna LeBlanc, Jeff LeBlanc, and Jody LeBlanc individually. The Court agrees with Defendants that only Jeff LeBlanc can be held liable for the cyberpiracy damages. Plaintiff never alleged a contributory cybersquatting claim, and did not allege a conspiracy to commit cybersquatting claim, if such a thing even exists. The ACPA limits liability to persons who improperly register or use a domain name, and liability for "using" a domain name arises "only if [a] person is the domain name registrant or that registrant's authorized licensee." 15 U.S.C. § 1125(d)(1)(D). Jeff LeBlanc registered the domain names, and under the statute he is the only person that can be held liable. Even though the jury returned a verdict in favor of Plaintiff on the civil conspiracy charge, the plain language of the statute limits liability to the registrant of the domain name. Thus, any damages for the ACPA violation will be limited to Jeff LeBlanc.

Moving on to the statutory damages request, Plaintiff urges the Court to award the maximum statutory amount. In general, when a plaintiff seeks statutory damages, "the court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc., 259 F.3d 1186, 1194 (9th Cir. 2001) (copyright action). The statutory damages are designed to discourage

wrongful conduct, as well as to afford restitution and reparation for injury. E. & J. Gallo Winery v. Spider Webs Ltd., 286 F.3d 270, 278 (5th Cir. 2002).

In finding Jeff LeBlanc liable under the ACPA, the jury determined he acted with a bad faith intent to profit. The jury also found that Jeff LeBlanc's actions were malicious, fraudulent, deliberate, or willful. It is also important in ruling on this issue to remember that Jeff LeBlanc's companies were direct competitors of Plaintiff.

Based on the facts established at trial, the Court finds statutory damages in the amount of $90,000 for each domain name to be appropriate, for a total sum of $180,000.

Plaintiff shall have until July 6, 2012 to make its election between the amounts awarded by the jury ($96,000 in actual damages and $96,000 in profits) and the $180,000 in statutory damages as determined by the Court.

## IV.   PLAINTIFF'S MOTION FOR PERMANENT INJUNCTIVE RELIEF

Permanent injunctive relief is generally available under the Lanham Act. 15 U.S.C. § 1116. While injunctions are frequently granted against infringing parties, a plaintiff is not automatically entitled to an injunction. *See* Angel Flight of Ga., Inc. v. Angel Flight Am., Inc., 522 F.3d 1200, 1208 (11th Cir. 2008). In order to obtain injunctive relief, a plaintiff must demonstrate that:

> (1) it has suffered an irreparable injury;
>
> (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury;

(3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and

(4) the public interest would not be disserved by a permanent injunction.

Id.

Thus, the standard for permanent injunctive relief is essentially the same as for preliminary injunctive relief, except that the movant must show actual success on the merits instead of a likelihood of success on the merits. Siegel v. Lepore, 234 F.3d 1163, 1213 (11th Cir. 2000). Plaintiff has already been awarded a preliminary injunction, and has shown actual success on the merits of its trademark infringement claims.

Plaintiff has presented a proposed permanent injunction to the Court, which has been reviewed and considered. The Court believes certain elements of the proposed injunction are overbroad and declines to implement them. The Court has crafted its own injunction, and orders that the following permanent injunctive relief is entered against Lloyd LeBlanc, Edna LeBlanc, Jeff LeBlanc, Jody LeBlanc, PMDJ, DSI, and MWA (referred to collectively as "Defendants" for purposes of this portion of the Order), and their respective officers, agents, employees, successors and assigns, and any other person or entity in active concert or participation with them:

(1)      Defendants shall immediately destroy any and all print and electronic copies of Plaintiff's master customer list still within their possession, including but not limited to Plaintiff's Exhibits 136, 137, and 197.

(2)      Defendants are permanently enjoined from making use of the contents of Plaintiff's master customer list for any and all purposes.

(3)      Defendants are permanently enjoined from transferring or conveying Plaintiff's master customer list to any person or entity.

(4)      Defendants are permanently enjoined from all use of any name, designation, or mark containing the phrases "MAXAM" or "MAXAM WHOLESALE," or any marks similar thereto or likely to cause confusion therewith, in the manufacturing, production, marketing, promotion, display, sale, offering for sale, distribution, or advertising of any products or services.

(5)      Defendants are permanently enjoined from making any statements or representations, or using the "MAXAM" or "MAXAM WHOLESALE" marks in any way, that suggests an affiliation, connection, sponsorship, or association with Plaintiff.

(6)      Defendants are ordered to destroy all advertising and promotional materials or other printed material containing the marks "MAXAM" or "MAXAM WHOLESALE."

(7)      Defendants are permanently enjoined from all advertising, promotion, and sale of any product containing any steam control lid knob substantially similar to

Plaintiff's lid knob depicted in its Supplemental Register lid knob trademark (the "infringing lid knob"), including but not limited to removing all photographs of such items from www.buydsi.com, www.heirloomcookware.com, and www.kitchenpridecookware.com.

(8)   Defendants are permanently enjoined from marketing, promoting, advertising, selling, offering for sale, distributing, or otherwise disposing of any product containing the infringing lid knob.

(9)   Defendants are permanently enjoined from destroying, altering, disposing of, concealing, or tampering with all business records, emails, invoices, purchase orders, confirmation orders, packing lists, and other information associated with the purchase, receipt, sale, production, promotion, or other disposition of products containing the infringing lid knob.

(10)   Defendants are permanently enjoined from otherwise violating Plaintiff's trademark rights.

(11)   Defendants are permanently enjoined from effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth above.

(12)   Defendants are permanently enjoined from aiding, abetting, contributing to, or otherwise assisting from engaging in activities enjoined above.

## IV.   PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

15 U.S.C. § 1117(a) permits a court to award attorney's fees "in exceptional cases." The Eleventh Circuit has defined an "exceptional case" for purposes of a Lanham Act fee claim as one where the infringing party acts in a malicious, fraudulent, deliberate, or willful manner. Burger King Corp. v. Pilgrim's Pride Corp., 15 F.3d 166, 168 (11th Cir. 1994); Optimum Techs., Inc. v. Home Depot U.S.A., Inc., 217 F. App'x 899, 903 (11th Cir. 2007). "Although a case may rise to the level of exceptionality, the decision to grant attorney fees remains within the discretion of the trial court." Burger King, 15 F.3d at 168 (citation omitted). The jury determined that the liable Defendants' actions were malicious, fraudulent, deliberate, or willful, and the Court finds that the circumstances of this case justify a discretionary award of attorney's fees under § 1117(a).

To calculate reasonable attorney's fees, the court must multiply the "number of hours reasonably expended on the litigation" and the "reasonable hourly rate" for the attorney's services. Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933 (1983). The product of these two numbers is the base figure, or "lodestar." Pennsylvania v. Delaware Valley Citizens' Council, 478 U.S. 546, 563, 106 S.Ct. 3088 (1986). The court may then account for other considerations that may require an enhancement or reduction of the fee. See Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1302 (11th Cir. 1988).

Factors courts should consider in calculating an award include: (1) the time and labor required; (2) the novelty and difficulty of the legal questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the expertise, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson v. Ga. Hwy. Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated in part on other grounds*, Blanchard v. Bergeron, 489 U.S. 87 (1989); *see also* Cable/Home Comm. Corp. v. Network Prod., Inc., 902 F.2d 829, 853 (11th Cir. 1990).

The party seeking the fees "bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." ACLU of Ga. v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999). Here, Plaintiff seeks $513,132.41 in attorney's fees.

## A.   Reasonable Hourly Rates

Reasonable hourly rates are to be measured by the "prevailing market rates in the relevant community." Blum v. Stenson, 465 U.S. 886, 895, 104 S.Ct. 1541 (1984). Prevailing market rates are those rates that are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. Id. at 895. The party seeking fees bears the burden of

producing "satisfactory evidence that the requested rate is in line with prevailing market rates." Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994) (quotation omitted). By "satisfactory evidence," the Court means "more than the affidavit of the attorney performing the work." Id. (quoting Norman, 836 F.2d at 1299)).

Plaintiff has filed affidavits from Drew DeMott, Charles E. Peeler, Colonel John P. Sinnott, James Thagard, and Wade Coleman, each of which outlines what the attorney believes to be reasonable hourly rates for the attorneys and paralegals who worked on the case. Based on the information provided in the affidavits, along with the Court's own familiarity with prevailing rates in the Valdosta market, the Court finds the following hourly rates to be reasonable: Drew DeMott - $225; James Thagard - $250; David Garland - $250; Jason Willcox - $225; Kim Minix - $200; Matthew Eutzler - $175; James Edge - $175; Matthew Monroe - $175; Lee Brown - $130; Bart Davis - $125; Kimberly Shirley - $75; Ashlee Morris - $55; Jennifer Walters - $75; and Lindsey Bobby - $75.

## B.    Reasonable Number of Hours

The second step in calculating the lodestar amount involves determining whether counsel spent a reasonable number of hours on the case. Excessive, redundant, or otherwise unnecessary hours should not be included in the calculation. See Barnes, 168 F.3d at 427.

Plaintiff seeks reimbursement for a total of 2,140.6 hours spent litigating the case. This consists of 2,053.4 hours of attorney time and 87.2 hours of paralegal time. The Court will address the paralegal time first.

Plaintiff seeks reimbursement for the following hours billed by paralegals working on the case: Kimberly Shirley - 7.2 hours; Lindsey Bobby - 7 hours; Jennifer Walters - 0.6 hours; and Ashlee Morris - 72.4 hours.

Work by paralegals is recoverable as part of an attorney's fees award only to the extent that the paralegal performs work traditionally done by an attorney. Jean v. Nelson, 863 F.2d 759, 778 (11th Cir. 1988). The Court has closely reviewed the billing records submitted by Plaintiff and finds that some of the work billed by the paralegals was clerical in nature, including but not limited to, filing documents on CM/ECF, creating binders, telephone calls with the Clerk of Court and the undersigned's chambers, telephone calls with court reporters, and drafting form pleadings. Accordingly, the Court has reduced the claimed paralegal time as appropriate. Plaintiff will be reimbursed for the following hours billed by the paralegals: Kimberly Shirley - 3.4 hours; Lindsey Bobby - 0 hours; Jennifer Walters - 0.6 hours; and Ashlee Morris - 48.7 hours.[5]

---

[5] As discussed further *infra*, Morris' hours relating to Plaintiff's supplement to its fees motion were also cut.

As for attorney time, Plaintiff seeks reimbursement for the following hours billed by attorneys working on the case: Drew DeMott - 1,662.8 hours; James Thagard - 13.4 hours; David Garland - 1.5 hours; Jason Willcox - 0.4 hours; Kim Minix - 0.8 hours; Matthew Eutzler - 14.8 hours; James Edge - 2.9 hours; Matthew Monroe - 119.1 hours; Lee Brown - 227.2 hours; and Bart Davis - 10.5 hours. For several reasons, the Court finds that reductions to these claimed hours are warranted.

First, some of the claimed hours consist of clerical work. "When reviewing an application for attorney's fees, the court may appropriately consider whether the work performed was legal work in the strict sense or was merely clerical work that happened to be performed by a lawyer." Miller v. Kenworth of Dothan, Inc., 117 F.Supp.2d 1247, 1261 (M.D. Ala. 2000) (internal citations and quotations omitted). The Court may deduct time entries for clerical work performed by an attorney as excessive. Id. Such work claimed by the attorneys in this case includes but is not limited to filing documents on CM/ECF, reviewing filing receipts generated by CM/ECF, and organizing files. The Court has reduced the hours billed accordingly.

Second, on April 30, 2012, the Court entered an order requiring Plaintiff to supplement its original attorney's fees motion. This was because Plaintiff did not provide proper support for its original motion. The Court does not believe Defendants should be required to pay attorney's fees related to Plaintiff's supplement to its fees motion. The Court has reduced the hours billed by counsel accordingly.

Third, some of the billed entries relate to the separate declaratory judgment action filed by State Farm. It is inappropriate for those hours to be charged to Defendants.

After deducting time for clerical tasks, the supplemental attorney's fees motion work, and the declaratory judgment action, the following hours are left for each attorney:  Drew DeMott - 1,637.5 hours; James Thagard - 12.9 hours; David Garland - 1.5 hours; Jason Willcox - 0 hours; Kim Minix - 0.4 hours; Matthew Eutzler - 14.8 hours; James Edge - 2.0 hours[6]; Lee Brown - 218.8 hours; Matthew Monroe - 118.6 hours; and Bart Davis - 10.5 hours.

However, the Court finds that additional reductions to the hours claimed are required. Some of the attorney time entries are redacted without explanation. The Court cannot tell if the tasks are compensable or related to the present case. If Plaintiff believed it necessary to maintain the confidentiality of this information, it could have moved to file unredacted versions of the billing statements under seal, but it did not. While some of the entries containing redactions have been reduced by Plaintiff's counsel as being "unrelated", for the majority of the entries the Court cannot tell if it is the redacted part of the entry that is "unrelated" or something else in the entry. Thus, the Court has decided to reduce the hours for all entries containing

---

[6] While Plaintiff claims 2.9 hours for James Edge, the Court can find only 2 billed hours in the records that have not been eliminated or reduced by counsel.

redactions by 20 percent. This reduction results in the following revised hours for the attorneys: Drew DeMott - 1,604.38 hours; James Thagard - 12.9 hours; David Garland - 1.5 hours; Jason Willcox - 0 hours; Kim Minix - 0.4 hours; Matthew Eutzler - 14.8 hours; James Edge - 2.0 hours; Lee Brown - 216.54 hours; Matthew Monroe - 118.6 hours; and Bart Davis - 10.44 hours.

The Court must also address the issue of block billing, which is when counsel lists all of the day's tasks in a single entry, without separately identifying the time spent on each task. The Eleventh Circuit has acknowledged the problems created by block billing, as that sort of timekeeping "makes it difficult, if not impossible, to calculate with any precision the number of hours an attorney devoted to a particular task in [the] litigation." Barnes, 168 F.3d at 429. The court described block billing as a "problem" for which the opponent should not be "penalized." Id.

In this case, the Court has found it difficult to gauge the reasonableness of many of the time entries submitted by lead counsel for Plaintiff, Drew DeMott. For instance, on March 2, 2012, counsel billed 9.9 hours as follows:

> Work on Memorandum of law in Support of Motion for Attorney's Fees; Analyze law regarding treble damages and prejudgment interest; Correspondence to Bill, John, Tami and Tom re: same; Correspondence with Don and Rob re: complying with Interim Injunction; Prepare Notice of Filing Portions of Trial Transcript; Work on spreadsheet of Attorney's Fees and Expenses; Work on Motion for Attorney's Fees; Work on Motion for Permanent Injunctive Relief, Order and memorandum in Support; Work on Motion for Statutory Damages; Work on Memorandum of

Law in Support; Work on Motion for Statutory Damages;
Work on Memorandum of Law in Support
On July 2, 2010, counsel billed 8.7 hours for the following:

Work on discovery production; Work on examinations of
Jody LeBlanc and Lloyd LeBlanc based on new evidence;
Work on damages methodology and calculations; Work on
obtaining catalogs and tabloids; Receive and review email
from Bill Meyer regarding tax returns; Correspond with Bill
and John regarding damages; Telephone conference with
John regarding production issues; Receive and review
confirmation of service of subpoenas on Haywood House,
American Surgical Steel, Steve Muscella, and TNT School
Sup.; Correspond with Don and Rob regarding discovery
issues; Telephone conference with M. Wagner regarding
subpoena responses; Prepare subpoenas to Marion
Chappell, Leather and Lace of Rome, Jose & Maria Coss,
Direct Buy of Atlanta, Fortune Valley Hotel & Casino,
American Marketing, Inc., and David Ramon;
Correspondence to Don and Rob regarding supplementing
responses to DSI, Jeff, and Jody's discovery;
Correspondence to Don and Rob regarding supplementing
responses to Edna's discovery; Receive and preliminarily
review Robert G Marshall subpoena response; Telephone
calls to Don regarding production issues; Email to Don
and Rob regarding same

Similar blocked entries are found throughout DeMott's time entries.[7] It is

impossible for the Court to determine how much time was spent on each task, which

makes determining reasonableness difficult. The Court recognizes that it can be an

---

[7] For a small sample of the block billing found throughout the statements, see the entries
for November 29, 2007, December 5, 2007, December 18, 2007, February 19, 2008,
March 13, 2008, August 25, 2008, December 2, 2008, February 27, 2009, April 30, 2009,
May 13, 2009, June 2, 2009, November 3, 2009, April 20, 2010, May 12, 2010, July 1,
2010, October 31, 2011, November 2, 2011, December 27, 2011, February 7, 2012, and
March 1, 2012.

arduous task for an attorney to write down what he does every six minutes, especially if he is working on the same client's file all day. But it is not impossible. Certainly an attorney can break out specific time for working on a motion versus talking on the telephone versus supplementing discovery responses, especially in a case like this where Plaintiff planned on seeking to recoup its attorney's fees from the day the complaint was filed.

A number of courts have approved across-the-board billing deductions to counteract block billing. *See, e.g.,* Pall Corp. v. 3M Purification Inc., 2012 WL 1979297 (E.D.N.Y. 2012) (30 percent reduction); BJCC, LLC v. LeFevre, 2011 WL 5597305 (M.D. Fla. 2011) (10 percent reduction); Ceres Envtl. Servs., Inc. v. Colonel McCrary Trucking, LLC, 2011 WL 1883009 (S.D. Ala. 2011), *aff'd*, 2012 WL 1414994 (11th Cir. 2012) (10 percent reduction); 2002 Irrevocable Trust for Richard C. Hvizdak v. Shenzhen Dev. Bank, Co., Ltd., 2011 WL 4112776 (M.D. Fla. 2011) (20 percent reduction). Based on its review of the billing records, the Court believes a 10 percent reduction of all hours claimed by Plaintiff for DeMott is appropriate. Thus, the revised hour calculation for DeMott is 1,443.94 hours.

Finally, the Court notes that in determining a reasonable fee, the hours spent on unsuccessful claims must be excluded. Norman, 836 F.2d at 1302. Plaintiff acknowledges that it was not successful on its claims for false advertising, trade dress infringement, conversion, inducing breach, tortious interference with prospective business relations, partnership, and defamation. Counsel states that he

has eliminated hours directly attributable to those claims. Counsel further states that he has eliminated hours attributable to its defense of Defendants' counterclaims and its tortious interference claims. Defendants also correctly point out that Plaintiff was unsuccessful on its misappropriation of trade secrets claim and use of advertising ideas claim. Plaintiff was also unsuccessful on its alter ego claim, its claims against LeBlanc's LLC, and its false designation claims against Lloyd LeBlanc, Edna LeBlanc, and MWA.

A review of the billing statements shows that certain entries were reduced or eliminated by counsel as being "unsuccessful" or "unrelated."[8] However, it is not clear why certain reductions were made, or how the amounts of the deductions were determined. Some entries are reduced by half, others by one-third. Further, the reductions are not consistent. For instance, Plaintiff filed a motion for preliminary injunction that was only partially successful. Some of the time entries relating to the preliminary injunction were reduced as being unsuccessful, while other entries relating to the same matter are left untouched. *Compare* April 24, 2008 entry to April 28, 2008 entry. Similarly, while counsel states that time relating to Plaintiff's defense of Defendants' counterclaims was excluded that was not consistently done. Time was spent on April 5, 2010 and April 6, 2010 relating to the counterclaims, but no

---

[8] The hours for which Plaintiff seeks reimbursement are the reduced hours.

reductions were made. Again, this is mainly an issue with the hours billed by DeMott, who did the overwhelming majority of the work on the case. While the Court certainly appreciates counsel's effort to make reductions for unsuccessful and unrelated hours billed, it finds that a further reduction is warranted. The Court declines to make a line by line analysis of five years of billing records, and instead will reduce DeMott's total hours by another five percent to account for the remaining unsuccessful claims. This leaves him with a total of 1,371.74 hours.

Multiplying the reasonable hourly rate by the reasonable hours expended yields the following lodestar amounts:

| Timekeeper | Number of Hours | Hourly Rate | Fee |
|---|---|---|---|
| Drew DeMott | 1,371.74 | $225 | $308,641.50 |
| James Thagard | 12.9 | $250 | $3,225 |
| David Garland | 1.5 | $225 | $375 |
| Jason Willcox | 0 | $225 | $0 |
| Kim Minix | 0.4 | $200 | $80 |
| Matthew Eutzler | 14.8 | $175 | $2,590 |
| James Edge | 2 | $175 | $350 |

| Matthew Monroe | 216.54 | $175 | $37,894.50 |
| Lee Brown | 118.6 | $130 | $15,418 |
| Bart Davis | 10.44 | $125 | $1,305 |
| Kimberly Shirley | 3.4 | $75 | $255 |
| Ashlee Morris | 48.7 | $55 | $2,678.50 |
| Jennifer Walters | 0.6 | $75 | $45 |
| Lindsey Bobby | 0 | $75 | $0 |

The lodestar amount of fees due Plaintiff from Defendants is $372,857.50.

**C.    Lodestar Adjustment**

Plaintiff contends that the attorney's fees award should be adjusted upward by 15 percent because of counsel's "superior representation" which obtained "exceptional results."

The lodestar amount may be adjusted, but there is a "strong presumption" that the lodestar is the reasonable sum the attorneys deserve. <u>Perdue v. Kenny A. ex rel. Winn</u>, --- U.S. ---, 130 S.Ct. 1662, 1673 (2010). "Upward adjustments of the lodestar figure are still permissible . . . in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts."

Delaware Valley, 478 U.S. at 565 (quoting Blum, 465 U.S. at 898-901); *see also* Perdue, 130 S.Ct. at 1673.

After careful consideration, the Court finds that an enhancement is not warranted in this case. The results of the litigation and the quality of counsel's representation are already accounted for in the lodestar. Factors already accounted for in the lodestar cannot be the basis for enhancing the lodestar. Perdue, 130 S.Ct. at 1673. The "party seeking fees has the burden of identifying a factor that the lodestar does not adequately take into account and proving with specificity that an enhanced fee is justified." Id. at 1669. Plaintiff has not met that burden. The request for the 15 percent enhancement is denied.

### D.   Nontaxable Expenses

Plaintiff also requests that the Court award nontaxable expenses under Federal Rule of Civil Procedure 54(d)(2)(A) in the amount of $6,606.93. This amount consists of $150.45 for telephone and fax costs, $1,468.83 in mileage costs, $734.83 in mailing costs, and $4,252.82 in computer research fees. The Court finds the telephone and fax costs, mileage costs, and mailing costs to be reasonable and will allow them. On the other hand, the Court denies the request for the computer research fees. Computer research is generally considered part of attorney's fees rather costs. Haroco, Inc. v. Am. Nat'l Bank & Trust Co. of Chicago, 38 F.3d 1429, 1440 (7th Cir. 1994). As Plaintiff has to establish its entitlement to attorney's fees, Plaintiff similarly has to establish its entitlement to the computer research costs. The

entries contained in the billing statements merely read "Computer Research (LexisNexis)" or "Computer Research (PACER)." That simply is not enough information for the Court to determine the reasonableness of the charges. The Court is not "responsible for combing through these various ledger entries and making educated guesses as to what legal research was performed on various dates, and whether the amount charged for that research is reasonable." Dupuy v. McEwen, 648 F.Supp.2d 1007, 1031 (N.D. Ill. 2009). The Court will allow $2,354.11 in non-taxable costs.

### E.    Conclusion as to Attorney's Fees

Plaintiff's Motion for Attorney's Fees (Doc. 303) is granted, in part, and denied, in part. The Court orders Defendants to pay Plaintiff $372,857.50 in attorney's fees and $2,354.11 in non-taxable costs, for a total award of $375,211.61.

## V.    COUNTERCLAIM FILED BY JEFF LEBLANC, JODY LEBLANC, AND DSI

Jeff LeBlanc, Jody LeBlanc, and DSI brought a counterclaim against Plaintiff in which they asked the Court to cancel and remove the lid knob trademark from the USPTO Supplemental Register. The Court has discretion under 15 U.S.C. § 1119 to order the cancelation of a trademark. As no party moved for summary judgment on this counterclaim, the Court reserved ruling until after the trial of the case.

In light of the jury's findings with respect to the lid knob trademark, the Court finds it would be inappropriate to cancel the lid knob trademark. The counterclaim filed by Jeff LeBlanc, Jody LeBlanc, and DSI is dismissed.

**VI.     CONCLUSION**

Defendants' Motion for Judgment as a Matter of Law, for Equitable Revision Pursuant to 15 U.S.C. § 1117(a), and/or in the alternative, for New Trial, or Partial New Trial, or Remittitur (Doc. 296) is denied. Plaintiff's Motion for Statutory Damages (Doc. 299) is granted, in part, and denied, in part. Plaintiff shall have until July 6, 2012 to make its statutory damages election in writing. Plaintiff's Motion for Permanent Injunctive Relief (Doc. 300) is granted, in part, and denied, in part. Plaintiff's Motion for Attorney's Fees (Doc. 303) is granted, in part, and denied, in part. Defendants are ordered to pay Plaintiff $372,857.50 in attorney's fees and $2,354.11 in non-taxable costs, for a total award of $375,211.61. The counterclaim filed by Jeff LeBlanc, Jody LeBlanc, and DSI is dismissed. Final judgment will be entered shortly after Plaintiff makes its election as to statutory damages. Plaintiff's Bill of Costs will be submitted to the Clerk of Court for consideration and decision.

**SO ORDERED** this 29th day of June, 2012.

/s/ Hugh Lawson
**HUGH LAWSON, SENIOR JUDGE**

mbh